I'm going to suggest on this case, and I'm not sure who's who on this, but we've got two appeals going on here. I'm going to suggest, well, I'm not going to suggest, I'm going to tell the parties, that you each have 20 minutes, but on your own appeal, obviously, you can reserve time for rebuttal. But I'm going to suggest that the Commissioner's appeal goes first, and then Gwendolyn Ewing, counsel, are you counsel for, is that Ms. Hawkins? Yes. Okay. Then when you get up, respond to the Commissioner's appeal, and then make your statement on, you have your own refund. And so then you can make your opening statement on that. And then when the Commissioner gets back up, you can respond to the refund and do your, if you want to save a short amount of time for rebuttal on whatever, then you would have brief rebuttal on your refund. But it's 20 minutes total, so that's the, therein lies the dilemma for the math, okay? But that way, we can keep them straight as far as that goes. So the Commissioner is up, Attorney for Commissioner is up here. Yes. May it please the Court, good morning. My name is Teresa McLaughlin, and I'd like to reserve five minutes for my rebuttal and answering time. Okay. So five total? All right. Sounds good. Yes. And the Commissioner is appealing jurisdiction, scope of review, and the merits. And I thought I would take them in that order unless anyone at the Court has another preference. I think that would be fine. So first on jurisdiction, the statute provides that in order for there to be tax court jurisdiction, it says, in the case of an individual against whom a deficiency has been asserted and who has, who elects to have subsection B or C apply, in addition to any other remedy, the individual may petition, and the tax court shall have jurisdiction to determine the appropriate relief under this section. Now, the Commissioner thinks that the meaning of the statute is plain, that without a deficiency being determined, and there is none in this case because this concerns a tax declared as due on the return, and the taxpayer having elected, made an election for relief under B or C, and there is none here, it's only an election for equitable relief under subsection F, there's no jurisdiction. Now, prefatorially, the Commissioner may have come to this view only recently, but it's decisions that issued on this were emanated before Congress amended the statute with retroactive effect in 2000. There's been tax court decisions on this? Well, not on this case. Not on this case, but there's a strong... But what you're saying is you may have not challenged jurisdiction in the past prior to the amendment. Right. And, but the Second Circuit was wondering aloud what the answer to this question was, so that sort of has served as a wake-up call to the Commissioner on this. So, but getting back to why we think that the statute's language is plain, subsections B and C really deal with, they deal with circumstances where there is a deficiency anyway, because B is classic innocent spouse relief where you didn't know or have reason to know that the return understated the liability, and so a deficiency determination sort of inheres in that. And a separate liability election under subsection C also doesn't apply to an instance where the tax is stated as due on return but is unpaid. So in the prior cases, Butler, there was a deficient, there was a deficiency, and there was an election under subsection B1. So the reasoning may have, the tax court may have been too broad, but the result in that then in the Fernandez case, there was no deficiency, so the petition was really standing alone in that sense. But at least there was an election under B and C. Now since that time, Congress went back to the statute and added the language that there must be an individual against whom the deficiency has been determined. And so if it weren't clear before, it is now. So are you basically adopting, there was a tax court judge, Laro, I believe, had a dissent that stated that there wasn't jurisdiction, and are you adopting that line of reasoning? We commend it to you, yes. What about, well, what do you do about the majority's position as to why that phrase was inserted? Okay, well the majority thinks that the language wasn't plain. We think it was plain because the statute talks about, in the case of an individual against whom a deficiency is determined and who makes an election under B and C. That's the preparatory language. And then it goes on that in addition to any other remedy, that individual, the individual may petition. So we think that it's clear that the preparatory language, you know, an individual deficiency election under B and C still applies to the jurisdiction, and that modifies the extra language about relief being available under this section. We think it's still talking about the individual in the preparatory language. But even if it were ambiguous, we have answers for the parts of the legislative history on which the tax court relied. The committee reports on the original statute. The House report said, well, we think there will be jurisdiction in the tax court to consider any denial of relief. Yes, exactly, Your Honor. But its bill concerned only what is now found in B, which always involved a deficiency. And the Senate's bill wanted separate liability determinations, allowing spouses to pay tax just on their share. And it provided for judicial review of that, but again, that doesn't matter because the equitable relief under subsection F came up in conference. So anyway, so really the concept that there would be this new kind of relief for people who flunked, expanded, or separate liability relief just came up in conference. And then we think that if it hadn't been clear, it certainly became clear in 2000 when Congress went back to amend the statute to explicitly require deficiency to be determined. What about the general line of argument of the majority of the tax court, which I think makes sense and pretty strong, is that, well, the way we construe the jurisdiction under this statute is in keeping with our jurisdiction generally in cases involving review of determinations and redeterminations. Isn't that sort of the general thrust? Well, that goes more to the scope of review, but I was just going to say that anyway. And so we think that the majority applied the wrong scope of review and that instead of applying a trial de novo, it should have just reviewed for an abuse of discretion on the record before, the administrative record before the IRS. And the first thing is that we have a good common sense approach to this because it's really awkward to find that the commissioner abused his discretion on the basis of new evidence that was never presented to him. And it's unwise as a policy matter because you're not encouraging people to make their best case to the commissioner. And if they do, then there's... Well, that's sort of contrary to general rules of appellate work. Right. Or also to evaluating how someone judges credibility when you don't actually see the witnesses. Right, exactly. So, but getting into... But generally, generally the tax court's review is de novo, right? Yes, but the tax court has acquired several different kinds of, it sort of has burgeoning non-deficiency jurisdiction. Getting back to Judge Tashima's concern about the word determined, similarity of the word determine in section 6015E and redetermination in the deficiency statute, deficiency jurisdiction statute, section 6213. We think that that word, the similarity in determine and redetermine, is not dispositive. And the most important reason is that in United States v. Raddatz, the Supreme Court decided that in the federal magistrate review statute, that the court makes a de novo determination, but it's still on the record before the magistrate. So de novo doesn't, I mean, determination does not necessarily connote a trial de novo. And the tax court majority also cited the fact that there are some provisions for making a declaration of the qualification of an employee plan for tax exemption, and that speaks of the declaration. But the committee reports talk about determination. So the word determination really can't bear that much weight. So what standard of review are you arguing? You're saying you can't bring in new evidence, but are you saying de novo or are you saying abuse of discretion? Well everybody agrees that the standard of review is abuse of discretion. We're also saying that the scope of review is abuse of discretion, which is traditionally on the administrative record. The other problem with that position is that you tell me if this is so now, but there isn't a single case, is there, that says the that proceeding is governed by the APA? Well, but in Section 5 U.S.C. 559, Congress decided that there is a standard of review that, you know, actually deficiency jurisdiction was grandfathered. And that trial de novo in deficiency determinations was really the paradigm example of trial de novo to the extent that the agency determination is unwarranted by the facts. But you haven't answered my question. Well, under Section 5 U.S.C. 559, anything that's not grandfathered, and deficiency determinations were clearly grandfathered and are supposed to be de novo, anything that, anything after the enactment of APA under 5 U.S.C. 559 has to be, the exemption from the record rule has to be expressed. Section 6015 sounds in the Commissioner's discretion. It's silent as to the scope of review. Therefore, since Congress didn't provide for trial de novo under Dickinson v. Zirko, it's got to be on the administrative record. The majority also cited some other code provisions that speak to the Commissioner's discretion. The Commissioner's discretion over accounting matters in Section 446, inventories 471, allocations between related tax payers, Section 482, and bad debt reserves. These are all accounting measures. And they're all really old. And what's more, as the dissenters, as Halperin and Holmes pointed out, they speak to instances where the Commissioner's discretion affects the existence or amount of a liability or an addition to tax. And that also goes for the Commissioner's discretion on extensions. And the only thing that doesn't fall within that is the jurisdiction under Section 6404 to review interest abatements, and that's another discretionary provision. And we agree with Judges Halperin and Holmes in dissent that that, too, should be made on the administrative record. And finally, the majority cited some procedural anomalies that it thought supported Trial de Novo. And it pointed out that if you raise equitable relief in defense as an affirmative defense to a deficiency determination, it thought that it should be de Novo. And we agree with Judges Halperin and Holmes that that part of any deficiency proceeding should be like this on the record before the Commissioner. And it's really okay to do that because it's two different exercises. One is, is it owed? The other is, did the Commissioner properly exercise his discretion in refusing to forgive it? Well, per sense, you're reading the 26 U.S.C. 615. Is there any way Ms. Ewing could procure tax court review of the Commissioner's denial of or request for relief? Well, she could probably get review under Section 6330, the collection due process provisions, because, and that's in advance of collection before the Commissioner can levy, has to give, he has to give the taxpayer a hearing. And that statute expressly states that the appeals officer is to consider appropriate spousal defenses. And that determination is reviewable by the tax court under, in an income tax case under Section 6330d1. So, and also, there's the other remedy is a refund suit. All right, now, is it my, just in terms of what you've discussed up to this point in time, win or lose, it's my understanding that this is something that probably needs to be a published opinion, that you're looking to direction in this area? Well, it's, it's an important issue and it would, you know, win or lose. I think that it's, it's important for, for the Commissioner to be able to, and, and taxpayers to know how these proceedings should be conducted. Well, I just have a very short time. I wanted to make one more point about the, the record review. And that is that the tax court majority cited the fact that within six months after an election, a person can go to court to contest the denial of relief. And even if the Commissioner doesn't make his determination, and we think that the best approach is to, is for the court to remand that to the Commissioner to, to do, to make a determination. But even if the court were to go ahead and do, and, and decide, at least in that instance, if it were doing trial de novo, it wouldn't be overriding something the Commissioner had done or, or starting over again. And then finally, very quickly on the merits. We think that the, you know, even if it was trial de novo, the tax court should not have overridden the Commissioner's discretion. It created new factors and, but the most important thing is it overrode the Commissioner's discretion to suffer economic hardship and that, well, basically, you're saying that the tax court substituted its view of the evidence for the Commissioner's, right? Yes. And we think that she could well afford the tax. And she knew when she signed the return, that the tax wasn't being paid and that her husband didn't have the money to pay it at this point. So unless you have any questions, I'll save the remaining time. No. Good morning, Your Honors. Karen Hawkins speaking for Gwendolyn Ewing. We have a majority opinion in Ewing 1. We have commentators who are writing about the statute. All, we have flora's in the Court of Claims, all of which tell us that the statute is not in effect. The statute is not a model of clarity. It is ambiguous. I find it difficult to read Judge Laro's dissent and listen to the government talk about how clear this statute is when it took the government four years of positions opposite to the one that they took in the Ewing matter to decide exactly what they wanted to say and how they wanted to say it. And as a matter of fact, it took the Justice Department to tell the Internal Revenue Service what their position was going to be. I think this statute is anything but clear. And once we determine that it is both unclear and ambiguous, and we recognize the fact that, in addition, the courts that have looked at this have called this over and over again curative legislation, it requires that we look at the legislative history and see what Congress really intended. If the plain meaning is at odds with that legislative history, then I think that we have to make some modifications to how we're interpreting what we see. I think it's particularly interesting that if you think back to the original statute, the 6013E statute, it had no explicit grant of jurisdiction in it to the tax court, because the presumption was that it would be raised in deficiency proceedings and the normal 6213 deficiency statute would provide the jurisdiction that the tax court needed. So if the literal reading that is being propounded by the government and the dissent is looked at, why in the world are we creating a new 6015E statutory grant that makes a big fuss about deficiencies? Because the new statute should have the same deficiency hook 6213 as the old statute 6013E had. Well, I guess, though, if in 2001 Congress added the language, in the case of an individual against whom a deficiency has been asserted to 26 U.S.C. 615E, what's the purpose of this language if it does not mean that an individual must wait for the commissioner to assert a deficiency before seeking review? I mean, you know, because obviously there are some rules of statutory construction that we can't, whether it's surpluses or whatever. Well, I think that Judge Rui does a very fine job of making that analysis. If you look at the legislative history, there are clear statements being made that because of the way the statute started out being ambiguous, there were premature requests for relief being interposed, mostly in dissolution situations where family lawyers were afraid that they weren't making the right requests at the right time and the service was being inundated with these requests where it hadn't even begun an examination. So I think that Judge Rui's reading in that regard is the correct one and the accurate one, that Congress was attempting to make two points that did not go to restricting the court's jurisdiction, the points being that at the very least the service had to be thinking about asserting additional income tax against someone. And in the second instance, a non-requesting spouse could not just come forward and bring a petition in the tax court to have a determination made with respect to the requesting spouse. They had to wait for that requesting spouse to kind of, in a sense, invoke jurisdiction. Before I can get to that, though, before I can get to why they say they did it, don't I need to make the determination that I can't tell from the plain language what it means? Well, I think you have other conflicting pieces of the statute that help you with that. I think it is more significant than the government does that the rest of E references the court's ability to provide relief under this section, not under this statute. But that's always been there. And I'm with Judge Kellin on the question. What is the purpose of adding this phrase at the beginning of that, you know, this conditional phrase, sort of like if phrase in which you have to have this assertion of a deficiency? I mean, you're saying that it was a meaningless exercise because the jurisdiction was always there and still there. Well, I don't think it was a meaningless exercise based on what Congress was being... It doesn't serve any useful function. What function does it serve, then? Well, I think it serves the function of identifying the fact that Congress and the Internal Revenue Service, which had already promulgated regulations on this point, had said that they didn't want to talk to anybody at a minimum until a deficiency had been raised. But if I could just finish my point about the prior statute, because essentially if 6015 without E would still have deficiency jurisdiction, maybe it is a meaningless statement except for adding the definer of the time frames within which people could ask. But the point that Congress made in both of the legislative histories, both the House and the Senate, was both the inadequacy of 6013 and the desire for Congress to see that the tax court had jurisdiction over any request for relief under 6015. So if you look at it that way, if there's been... And the time frames say that anybody can ask for relief within two years after collection begins. The outer limit was there in the original statute as it was written. But once you get through a deficiency and once a deficiency has actually been assessed, there really isn't any difference between a deficiency that's assessed by the commissioner or a deficiency that's self-assessed on a tax return by showing a tax that's unpaid. And at that point in time, it really becomes an issue of the collection of a liability. So I really think that we can't be so narrow in our view of the use of the word deficiency in 6015E. I realize that in many places in the Internal Revenue Code it's intended to be a term of art, but in this area I think it is intended to be a defining factor for the periods of time within which a taxpayer can request relief. A couple of other points. What's your position on the scope of review by the tax court? It appears to be conceded that the tax court reviews for abuse of discretion. And so why isn't the tax court limited to reviewing the administrative record? And if the administrative record is inadequate, why isn't a remand appropriate for that court to develop a more complete record? I think that's sort of what they raised there. Okay. I would call the court's attention to a fairly recent tax court case. It's May of 2005 called Friday v. Commissioner, which was in direct response. It's 124 TC. It's number 13. I'm sorry, I actually tried to find it yesterday and it hasn't been officially published, so it's just their 13th decision. And it is in direct response to a revenue procedure that was promulgated by the service 2004-26 in which the service effectively said that to its lawyers, don't go forward and ask for summary judgment anymore as long as Ewing is in existence, but ask for a remand so that we can reconsider F. And in Friday, that's exactly what happened. The government asked for a summary judgment motion to be dismissed and asked for the case to be remanded. And in that case, Judge Gerber rejected the concept of remand, said that 6015, and I think this is where everybody is getting very confused, 6015 is not 6330. 6015 is a statute which gives the court the opportunity to grant relief and to give relief. It doesn't ask the court to review what the commissioner has decided. And that language in 6015E is very clear. So Judge Gerber took the position, and it's a TC-reported opinion, that there was no remand opportunity in 6015. Once someone came into the court on a tax court petition, the court had the jurisdiction to do what it needed to do, and there was nothing that authorized the remand nor that should justify the remand. I don't know what you're arguing at, but is it correct that it's your position also, as well as the government's, that the proper review of the commissioner's decision is for abuse, abuse of discretion, or not? I'm a bit schizophrenic on this point. I think that if you determine that the court has jurisdiction of 6015F, I seriously question whether the scope of review should be abuse of discretion. I think that in the early days of these two statutes, that everybody, the court, the service, and maybe even some of us privately practicing were trying to squeeze both 6330 and 6015 procedures into the same round hole, except one of them was a square peg. 6330 specifically calls for the court's review when there is an unpaid liability, and the collection methodologies in dispute calls for an abuse of discretion review. It's right in the legislative history. When there is a liability question in play, it calls for a de novo review in the legislative history of 6330. I think they were trying to analogize the fact that we were dealing in AFF more often than not with unpaid liabilities, and so somehow it made sense that it should be an abuse of discretion review. But in retrospect, as I study the statute and I look at the struggles that everybody has, if this court, if the tax court really has jurisdiction over F, then I think it has jurisdiction under its deficiency review standards, and I think it has de novo review and standard. It's sort of a new thought for me. But, you see, that gets back to the other problem. If you say if it has jurisdiction. Yes. Okay. If you say it has jurisdiction under its deficiency review jurisdiction, but no deficiency has been asserted, right? I'm sorry, Your Honor. You just said if the tax court has jurisdiction, it's under its deficiency review jurisdiction. But in this case, no deficiency has been asserted. It gets back to the other problem, doesn't it? Except I'd like to call your attention to Judge Thornton's concurring opinion because I think there were a couple of things. In the one or two? He's a concurring opinion in Ewing 2. 2, okay. And I think the important thing about Judge Thornton's concurring opinion is that it really gets to ‑‑ it discusses the APA applicability, which is really where the abuse of discretion and the record rules start to come into play. And one of the points that he makes is that when the APA was passed and when the tax court's procedures were exempted, the tax court did not just have deficiency procedures. It did not just have deficiency review. He points out that the tax court's jurisdiction at the time the APA was passed was far broader than that and that there was, in fact, the existence of some refund determinations as well as other kinds of oversight. So I think it's an incorrect reading of the APA to say that it exempted only the tax court's deficiency proceedings. That's not what it did. It exempted all proceedings before the tax authorities. And I think for the most part they did that, as Judge Thornton alludes, because there was an internal revenue code in place that really governed substantially the procedures before the tax court, and they felt that that was sufficient for dealing with things. And Judge Thornton sees 6015 as just being another piece of the structure of the internal revenue code over which, for the most part, the tax court has a de novo review of all of the facts. It holds a trial. Another point that you have to keep in mind with these F cases is that the service and the statute say or the regulations say that in order to be, in order to obtain relief for an unpaid liability, the taxpayer has to demonstrate that it was reasonable for the taxpayer to have believed that the tax was going to be paid. Not paid with the tax return, as the commissioner would have you think in the brief, but paid. And it seems to me that that goes to someone's mental processes. It goes to someone's belief. It goes to someone's credibility. I don't know how a tax court reviews the commissioner's determination about someone's beliefs and credibility without at least putting them on the stand and hearing what they have to say. Let me ask you this. You're at six minutes, so how do you want to reserve about three? All right. So you also have to go into your own appeal. Correct. So can I say just a brief? Well, you can spend your time any way you want, but it will be gone when it's gone. Well, I want to say just a couple of things about relief. I don't believe, if you read the record and you read the opinion, this decision about granting relief to Gwendolyn Ewing was not based on new evidence. As a matter of fact, the new evidence that's recited in the record, which doesn't appear to really come into play, was all introduced by the government. It was not introduced by the taxpayer. Her subsequent wage earnings, her purchase of a home, the values of her IRAs, what's in the bank account, all of that is post-February 1999 when the commissioner made its determination. I'm sorry, 2001, when the commissioner made its determination. And it's certainly post-1996 when she is signing a return with a liability on it for which she has not enough money to pay. And you have a copy in the record of her checkbook register that shows she had about 50 bucks left by the time she paid that $1,069. So this is not new evidence. The trial court got to hear real people present the existing evidence, and there's some serious questions about whether the entire record was there. I think we've briefed that enough in our papers that I don't need to say too much about that. But I think that's a serious danger in this area. Your Honor, you asked a question about whether Ms. Ewing would be able to go to tax court in any other way if she didn't have jurisdiction here. I really need to correct the commissioner. On its surface, superficially, it looks like she would have a collection due process opportunity under 6330 if they began collection action against her. But, in fact, if you read the regulations that the government has promulgated under 301.663-1p.e.2, you will find that they specifically state that if someone raises a spousal defense in a CDP hearing, all of the provisions of 6015 apply and none of the provisions of 6330 apply. So what the government is not telling you is that as soon as Ms. Ewing's collection activity began and she would raise her 6330 opportunity, they would shout no jurisdiction under F and F controls because it's a 6015 case. We don't care what 6330 says. So, effectively, if the tax court has no jurisdiction in the way that we've argued it in our briefs, these mostly low-income taxpayers are never going to get to the tax court. And, for the most part, they're never going to get to any other court because most of them don't have the money to full pay the liability in question in any kind of a way to be able to get to the court. Or if they do, the period of time is so long, by the time they full pay so they can do a claim for refund and get to the federal district courts, they don't get any of the money back because the time frames have run so that their requests don't fall within the time frames. And that's – well, let me just say something about the refund. I think that the refund issue is pretty well briefed, as I've said it is. The commissioner makes a big deal about the fact that nothing in Form 8857 says I'm claiming a refund. I think the case law is pretty clear on this. In many, many different ways, and the commissioner is deemed to have understood that if there's enough language. The attachment to the 8857 explicitly shows what her tax liability would have been had she filed separately and shows that she would have been entitled to a refund. I think that constitutes a refund claim, and that was submitted within the three-year time frame provided under 6511. So I actually think her refund claim is timely, and the issue of whether or not she really made the claim I think is just a red herring. I would point out, however, that it's a pyrrhic victory under F to get a refund after the service has collected it all if you're not entitled to get some of it back, and that's kind of the equity issue, I think. All right, thank you. Well, I have three points in response. First, I don't think that Section 6015 really can be viewed as surplusage in its entirety, and one reason for that is that the tax court's jurisdiction to determine various things are, you know, purely statutory. It's got deficiency jurisdiction, you know, to redetermine deficiencies under Section 6213. It's got jurisdiction to determine new matter, additional further deficiencies and additions to tax under Section 6214. And it even has the jurisdiction to find incidental refund jurisdiction is in 6512. So I think all these things really have to have meaning. Second, about Judge Thornton's concurrence. I think Judge Thornton's concurrence really rests on a conviction that Congress must have been aware of, a custom of trial de novo in deficiency proceedings, but it still doesn't answer the Section 559 point that this is, you know, it's something sounding in discretion and there's no express exemption from the record rule. Third, on the Section 6330 reg, I don't have that at my fingertips. I don't know exactly what it says, but I believe, and my contacts in the IRS National Office also believe, that this really would be reviewable under Section 6330. Well, I know, but people always get frustrated when they do that and then there's another attorney there and the other attorney says, but. . . Well, I just wanted to say we think that there is. Then going to the cross appeal and the awarding of a refund, we think that there are lots of difficulties with that. First, it wasn't really raised properly below. It wasn't pled. It wasn't raised at trial. It was mentioned just in the brief, post-trial brief in passing. And equivocally, you know, you may wish to order a refund, but there's a bigger problem, and that is that there's a lack of jurisdiction because there's no timely claim for a refund. And Section 6015G allows credit or refund to be made, but it expressly incorporates Section 6511, which is the timely refund claim rule. And the time for filing one would have expired three years after the return was filed, which would be April 15th, 1999. The taxpayer contends that her election, which was filed in January of 1999, you know, would work as an informal refund claim. But when you look at her election, what you see that she's doing is that she's establishing that she paid tax on her share of the couple's income. And she actually had to do that to satisfy threshold eligibility for relief. I mean, if it wasn't attributable to him, if the understatement, underpayment wasn't attributable to him, she wouldn't be entitled to do that at all. And she didn't even ask for a refund. So Ms. Hawkins' argument that, well, the case is recognized an informal claim. Yes, and so I'm focusing on why her election is not an informal refund claim. She never asked for a refund. All she's demonstrating is that the underpayment was attributable to him, and that's something that she had to establish for innocent spouse relief. So the IRS wasn't put on notice that she was asking for a refund. And one peculiar thing is that the separate liability election, which, you know, she was trying to, if you entertain the conceit that she's trying to get back more than anything that she paid, which is more than what she would have paid if she'd filed singly, Congress allowed that in subsection C. But it's only for understatements. It's not for underpayments. And it's also only where the person seeking relief didn't know of the understatement. And so it doesn't apply where – and also it's only where you're still living with your spouse. I mean, when you're not still married to or living with your spouse. All right. Your time's expired. Thank you. Just a couple of points. A 6015-F claim for relief is simply a claim that says that for reasons of equity, a taxpayer ought not be held liable for a particular tax. It's not a question of whether the taxpayer could actually pay it. And I think that's where a lot of the analyses in this arena kind of go awry. The issue is, should the economic unit of the family, for some reason, be disregarded because of other events that have occurred? A spouse has been misleading. It was his item. They're no longer married. Whatever the circumstances are, should there be relief granted because the traditional economic unit that has filed the joint return, which, by the way, I don't view as a privilege, has fallen apart for some reason. Too often, the government in particular, but I think the tax court has made this error on occasion, looks to the – You don't have to keep your voice up. I'm sorry. The financial wherewithal of someone as the defining feature as to whether someone should be granted relief or not. And I just don't see that that's the kind of statute this is. This is a relief statute. It's not a collection statute or a collection determination statute. That's what 6330 is all about. So the ability to pay shouldn't have really been factored in is what you're saying. Well, it's a factor. 2015 says, and the judge, Colvin, did not create new factors. He interpreted 2015 as the government has written it, which is it is a non-exclusive list of factors to be taken into consideration, but it is not the only considerations that can be taken. And I'd call the Court's attention to 6313 – yeah, 6015, sorry, E3, which is specifically identified as a limitation on the tax court's jurisdiction. If they wanted to limit the court's jurisdiction, they should have done it with reference to deficiencies and underpayments there, and they do not. All right, thank you. I think we have your arguments well in mind. Thank you both for your arguments in this matter. This matter will now stand submitted. The Court is going to take a brief recess of five minutes, and then we'll resume.
judges: Farris, Tashima, Callahan